**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3140
_____

JORGE SANTIAGO AGUILERA,
Appellant

v.

ZACHARY W. DAVIS, Owner of Davis-Young Associates, Inc.;
DAVIS-YOUNG ASSOCIATES, INC.
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 15-cv-00881)
District Judge:  Honorable Richard G. Andrews
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 20, 2018
Before:  VANASKIE, COWEN and NYGAARD, Circuit Judges

(Opinion filed: February 22, 2018)
_____

OPINION[*]
_____

PER CURIAM

      Pro se appellant Jorge Santiago Aguilera filed this employment discrimination suit

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

against Appellee Davis-Young Associates, Inc. (Davis-Young), and its owner, Zachary W. Davis, alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq., and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (ADA). The District Court granted Defendants' motion for summary judgment, and this appeal ensued. For the reasons that follow, we will affirm.

The District Court set forth the facts in the summary judgment record in the light most favorable to Aguilera. In sum, Aguilera was employed as a master mason by Davis-Young, a small landscaping company. In February 2003, he suffered a work-related back injury, for which he received workers' compensation benefits. He returned to full-time work in March 2003. In July 2013, he suffered a second work-related back injury. He returned to work in August 2013, but was restricted to "medium duty" work, which Davis-Young accommodated.

On Friday, October 24, 2014, while still under this work restriction, Aguilera reported to work at 7:30 a.m., and, shortly thereafter, suffered yet another back injury. Alone at the work site, Aguilera contacted his father, also employed by Davis-Young, who picked up Aguilera at "about 8:30, 8:35," and took him home. Dep. Tr. at 33. Cell phones records reveal that Aguilera contacted Davis at 8:48 that morning. Aguilera testified that he left a voice message indicating that he had hurt his back and that he was seeing a doctor. He did not indicate how long he expected to be out of work.[1]

---

[1] Aguilera initially testified that he called Davis *after* seeing the doctor, and left a message indicating why he had left the work site, and informing him "what the doctor

2

Aguilera was examined later that morning by a physician at MedExpress, who filled out a "Duty Form" indicating that Aguilera could return to "modified duty" as of that day, and anticipated a return to full duty on October 31, 2014. Aguilera's father provided the "Duty Form" to Tim Young, then co-owner of Davis-Young, on Monday, October 27, 2017. Davis averred that he did not see the "Duty Form" "until about a week or a week and a half later." District Ct. Docket #36-1, pg. 4. Both Young and Davis inquired about Aguilera's whereabouts to his father, who responded that Aguilera was "hanging out in the basement in the same house where they lived together." Id.

Aguilera did not contact Davis or anyone at Davis-Young until November 7, 2014, when he went to the office to pick up a pay check. At that point, Davis informed him that he had been terminated. Davis averred that he had believed Aguilera had abandoned his job. Aguilera returned to Davis-Young on November 17, 2014, with medical forms, seeking an accommodation for his injury; he was again informed that he no longer worked for the company.

---

had said, which was to take medication and rest for two weeks." Dep. Tr. at 33. He later testified that he called Davis "shortly after the accident," and corrected his testimony to indicate that the call was made before going to the doctor. Id. at 59, 74. He also stated that he didn't inform Davis in the voice message how long he would be out of work "because, and maybe it was my mistake, that I thought it was the same treatment as the first injury," which was two weeks' rest. Id. at 48. Subsequently, in support of his motion for summary judgment, Aguilera submitted a copy of his phone record with a notation indicating that he had called Davis before the medical examination. The medical record from MedExpress also supports this timeline.

Aguilera alleged in his complaint that he was terminated from his employment because of his disability. The parties cross-moved for summary judgment. The District Court denied Aguilera's motion, and granted Defendants' motion, determining, in part, that Aguilera failed to offer evidence showing that Defendants' proffered legitimate explanation for the termination was pretext for discrimination.

We have appellate jurisdiction under 28 U.S.C. § 1291. Our review of an order granting summary judgment is plenary. DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Kaucher v. County of Bucks, 455 F.3d 418, 422-23 (3d Cir. 2006). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

For the reasons provided by the District Court, Aguilera's claim under the Rehabilitation Act, and his ADA claim against Davis fail as a matter of law. See 29 U.S.C. § 794(b); Emerson v. Thiel Coll., 296 F.2d 184, 189-90 (3d Cir. 2017). We therefore limit our analysis to his remaining claim against Davis-Young under the ADA.

To establish an employment discrimination claim under the ADA, "a plaintiff must demonstrate that he or she is a 'qualified individual with a disability' within the meaning of the Act, and that he or she has suffered an adverse employment decision as a

4

result of the discrimination." Tice v. Ctr. Area Transp. Auth., 247 F.3d 506, 512 (3d Cir. 2001) (citation omitted); see also Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). Where, as here, there is no direct evidence of discrimination, we analyze the discrimination claim under the burden-shifting paradigm set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[2]

The Defendants did not contest that Aguilera established a prima facie case. We agree with the District Court that they overcame the presumption of discrimination by offering a legitimate, non-discriminatory reason for Aguilera's termination – he had abandoned his job – that Aguilera failed to demonstrate was pretextual. The evidence was uncontroverted that, aside from the phone message left just after the incident, Aguilera did not contact Defendants directly regarding the October 24th injury. The only information that Davis-Young had regarding the extent of Aguilera's injury came from the Duty Form, which indicated that he could return to work the day of the injury for medium duty,[3] and return to full-time work a week later. In Aguilera's absence, Davis-

---

[2] Under this framework, the plaintiff has the burden to make a prima facie showing of discrimination; the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment action; and the plaintiff must then demonstrate by a preponderance of the evidence that the proffered explanation is pretextual. See Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007) (noting, also, that this framework is applicable to claims under the ADA).
[3] To dispute the proffered explanation, Aguilera notes that the MedExpress record also prescribed follow up treatment, including rest and a muscle relaxant for pain. Appellant's Br. at 2. This information was not necessarily inconsistent with the MedExpress doctor's conclusion that Aguilera could return to modified duty on the day of the injury. Absent any other evidence, Davis-Young could reasonably rely on this conclusion.

5

Young had to subcontract out his position to ensure contract deadlines, and, having not heard from him for two weeks, the company could reasonably conclude that he had abandoned his position. This conclusion is further supported by the record evidence that Aguilera had "approached Davis about leaving Davis-Young and looking for other employment," just months' prior. District Ct. Docket #36-1, pgs. 4-5. Finally, the record demonstrates that Davis-Young has a history of accommodating its employees' injuries, including Aguilera's previous injury, further indicating that the proffered reason was not pretext for discrimination.[4]

Aguilera claims on appeal that the District Court failed to consider his evidence, including the witnesses he intended to present. However, he failed to produce any potential witness evidence, in the form of declarations or affidavits, or any evidence that would suggest "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Davis-Young's] proffered legitimate reasons" for terminating him. Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). Indeed, Aguilera did not indicate, either in the District Court or on appeal, the nature of the evidence that his witnesses could provide. Accordingly, Davis-Young was entitled to summary judgment.

Based on the foregoing, we will affirm the District Court's judgment.[5]

---

[4] To the extent that Aguilera claimed that Davis-Young failed to accommodate his disability, we agree with the District Court that there is no support in the record for the claim, particularly where he failed to seek accommodation until after his termination.

[5] Appellees' motion to file Volume III of the Supplemental Appendix under seal is granted. See Doe v. Delie, 257 F.3d 309, 314-15 (3d Cir. 2001); Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786-87 (3d Cir. 1994)